# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Case Number: __18-5665 (kf)__

Case Name: __Amy Mischler v. Matt Bevin, et al__

Name: __Amy Mischler__

Address: __1120 Palm Court__

City: __Okeechobee__                State: __Fi__    Zip Code: __34974__

## PRO SE APPELLANT'S BRIEF

**Directions:** Answer the following questions about the appeal to the best of your ability. Use additional sheets of paper, if necessary, not to exceed 30 pages. Please print or write legibly, or type your answers double-spaced. You need not limit your brief solely to this form, but you should be certain that the document you file contains answers to the questions below. The Court prefers short and direct statements.

Within the date specified in the briefing letter, you should return one signed original brief to:

**United States Court of Appeals For The Sixth Circuit**
540 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio   45202-3988

1. Did the District Court incorrectly decide the facts?      ☒ Yes      ☐ No

   If so, what facts?

   *See attached typewritten page.*

2. Do you think the District Court applied the wrong law?      ☒ Yes      ☐ No

   If so, what law do you want applied?

   *See attached typewritten page.*

## EXHIBIT A

3. Do you feel that there are any others reasons why the District Court's judgment was wrong?

[X] Yes  [ ] No

If so, what are they?

*See attached typewritten page.*

4. What specific issues do you wish to raise on appeal?

*See attached typewritten page.*

5. What action do you want the Court of Appeals to take in this case?

*See attached type written page.*

I certify that a copy of this brief was sent to opposing counsel via U.S. Mail on the **29** day of **Sept**, 20**18**.

Signature (Notary not required)

*[signature]*

A. Since the motion for extension of time has been requested by the Appellant; her elderly father has been taken to the emergency room twice, one overnight hospital stay, multiple doctor visits, one surgical consultation, and has went from 4th stage kidney disease to the 5th stage, back to the 4th stage [barely]. He has not slept more than two hours at a time. The Appellant must get up multiple times during the night with him and has a monitor to listen him at night.

This brief is without details to the record and in a non-traditional format because the Appellant simply has not had time for such details. She apologizes to the Court.

Part 4.

### Issue A.   Undisclosed Judicial Conflict of Interest.

Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/29/2018.

4.A.1  Judge Gregory Van Tatenhove failed to disclose on the record that he was in a romantic relationship with the at will employee of Appellee Matt Bevin. That employee is a former law clerk of Judge Van Tatenhove. Her name is Eva Christine Trout Van Tatenhove.

4.A.2  A state employee contacted me and informed me that Judge Van Tatenhove receives not only the financial benefit of Trout receiving a paycheck from being employed by Appellee Matt Bevin, but that Bevin sends Trout on multiple professional trips where Judge Van Tatenhove accomapnies thses trips with Trout. One such trip was to have taken place in June 2018 to Hawaii. Trout is said to be insistent on using the Trout-Van Tatenhove personal credit card to purchase airline miles in order to earn free airline miles with Kentucky reimbursing the credit card purchase. It is believed that Kentucky pays for at least some expenses of Judge Van Tatenhove, specifically he receives "free" hotel rooms with Kentucky paying for the room that he and his now wife stay in on these trips before and after their marriage. Social media shows

Judge Van Tatenhove and Trout on frequent exotic vacations.

4.A.3 Cooper Van Tatenhove, the son of Judge Van Tatenhove also holds himself out to be employed by Appellee Matt Bevin.

4.A.4 The reason the Trout conflict was not discovered earlier was because she and Judge Van Tatenhove were cohabitating and not married. A regular person not associated with the legal community would not be able to discover the conflict of interest easily.

4.A.5 I cannot find a copy of <u>Arizona v. United States Dist. Court</u>, 459 U.S. 1191, (1982) which would be controlling law upon the Sixth Circuit. Arizona appears to uphold <u>In Re Cement Antitrust., Litig.</u>, 688 F.2d 1297 (9th Cir.) See Attached Exhibit 1 and 1A.

4.A.6 <u>In re Cement Antittrust litigation.</u>, holds that, "*after five years of litigation, a multi-million dollar lawsuit of major national importantce, with over 2000,000 class plaintiffs, grinds to a halt over Mrs.Mueck's $29.70. A new judge must now be assigned to conduct further procleedings*". id. The financial interest to Mr. & Mrs. Van Tatnehove [Trout] greatly exceeds $29.70, including her at will political employment with the Appellee, free airline miles, and free lodging for Judge Van Tatenhove paid by the Kentucky taxpayer.

**Issue B. Undisclosed Conflict of Interest and internet stalking of the Appellant by Chief Judge Karen Caldwell.**

Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/29/2018.

4.B.1 The documents supporting these statements have already been filed at the Sixth Circuit Court of Appeals in another action.

4.B.2 When the Appellant discovered the conflict of interest of Judge Van Tatenhove and Appellee Matt Bevin; she exercised her 1st Amendment Right on social media about the

issue.

4.B.3 Judge Karen Caldwell, the Chief Judge of Judge Van Tatenhove's Federal District stalked the Appellant's twitter account and possibly other social media sites.

4.B.4 Judge Caldwell on her twitter account then "followed" the Appellant on twitter in order to see any hidden posts.

4.B.5 Judge Caldwell twitter account was unlocked and her followers and follows individuals could be viewed at that time.

4.B.6 Judge Caldwell did not have many followers and follows indicating the account was for private use. However, significantly one of Judge Caldwell contacts was the Chief of Staff for Appellee Matt Bevin, the same Matt Bevin who employed Judge Van Tatenhove paramour.

4.B.7 Judge Caldwell could be using twitter to communicate privately on the "message" feature with Appellee Matt Bevin about this case.

4.B.8 If Appellee's Matt Bevin employee of Judge Van Tatenhove's paramour was not in violation of the conflict of interest rules; there would be no reason for Judge Caldwell to stalk the Appellants twitter account.

4.B.9 *This is a case of first impression.* I do not think the Constitution allows Federal Judges to stalk litigants or use social media to contact parties closely associated with litigants.

### Issue C. *Judge Van Tatenhove lacks competence to be a Federal Judge*

4.C.1 Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/29/2018.

4.C.2 The documents supporting these statements have already been filed on PACER in either or both the Sixth Circuit Court of Appeals and the Eastern District of Kentucky.

4.C.3　Judge Van Tatenhove allowed a teenager who had just finished his freshman year of college to be a law clerk for Judge Van Tatenhove.

4.C.4　This teenager was friends with Cooper Van Tatenhove, the son of Judge Van Tatenhove.

4.C.5　This teenager bragged online that he wrote opinions and orders on habeas corpus cases assigned to Judge Van Tatenhove.

4.C.6　No competent federal judge would allow a teenager who had been admitted to law school to write opinons and orders for a federal bench. The Appellant does not know what disability Judge Van Tatenhove has, whether it is part of the opoid crisis hitting Kentucky, an undiagnosed brain tumor or other. But any reasonable person would conclude that Judge Van Tatenhove is not fit to federal judge for allowing a teenager to draft habeas corpus orders.

## ISSUE D.　UNDISCLOSED SOCIAL MEDIA RESEARCH BY SIXTH CIRCUIT COURT OF APPEALS

4.D.1　Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/29/2018.

4.D.2　The documents supporting these statements have already been filed on PACER in either or both the Sixth Circuit Court of Appeals and the Eastern District of Kentucky.

4.D.3　At least once, the Appellant has seen an additional hit on her blog from an IP address from Cincinnati Ohio which she believes is someone in the Sixth Circuit Court of Appeals. This is addition to the several others document visits to her website and others she has already filed on PACER showing directly that the Federal Court are doing undisclosed social media research on litigants.

4.D.4　*This is a case of first impression.*

4.D.5 The Constitution requires that a litigant be able to examine any evidence used by the District Court in its decisions. This falls under the confrontation clause. Judges doing undisclosed social media research on litigants violates the confrontation clause in addition to due process notice and equal protections guaranteed in the U.S Constitution.

4.D.6 See Exhibit 2 where Appellant believes the Sixth Circuit Court of Appeals employee did internet research on the Appellant around the time an order was filed in this action.

## ISSUE E. THE KENTUCKY DISTRICT COURT SENT F.B.I AGENTS TO INTIMIDATE THE APPELLANT TO COVER UP JUDGE VAN TATENHOVES AND JUDGE CALDWELL JUDICIAL MISCONDUCT.

4.E.1 Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/29/2018.

4.E.2 The Appellant, who has a Juris Doctorate of Law attempted to protect the reputation of the Federal Courts in these matters. She contacted Judge Caldwell in her administrative capacity in an attempt to mediate these matters.

4.E.3 Judge Caldwell rejected the branch of goodwill the Appellant offered.

4.E.4 The Appellant then went forward and filed on PACER for the public record about both issues of Judge Van Tatenhove and Judge Caldwell written in the prior paragraphs.

4.E.5 Either the District Court or Appelle Governor Matt Bevin, or someone their behalf contacted the Kentucky F.B.I and reported that I was making "threats" to expose information as if it was some type or bribe AFTER THIS INFORMATION was already filed in the public record on PACER by Ms. Mischler.

4.E.6 Without warning or contacting the Appellant before hand, Special Agent Shane Baumgartner and another agent who did not leave his business card showed up at the Appellants home on July 3, 2018.

4.E.7 Special Agent Baumgartner contact information is as follows. Ft. Myers

Reisdent Agency, 12481 Gateway Blvd., Ft. Myers, FL 33913, Telephone (239) 337-7171, shane.baumgartner@ic.fbi.gov

4.E.8 Special Agent Baumgartner indicated he was contacted by the F.B.I. in Kentucky to contact me.

4.E.9 Special Agent Baumgartner towards the end of the interview asked if I had "intention" to go to Kentucky and expose information. I realized that he was talking about Judge Van Tatenhove and Judge Caldwell unethical actions and how I tried to mediate; that they were claiming this was some type of bribery against a judge to bring a false charge against me.

4.E.10 I explained to him I had a J.D. and understood the importance of protecting the public integrity in the judicial system. I explained to him that yes, I had contacted Judge Caldwell to mediate the situation. Finally I explained to him how silly the allegation made against me was due to the fact the information was filed in the public domain on PACER. So it was impossible to "expose" it in some nefarious way because proverbally, the cat was out of the bag AS I HAD ALREADY FILED IT.

4.E.11 Realizing that he and his fellow agent were sent on a wild goose chase by Kentucky officials and Kentucky F.B.I agents; whose only motive would be to intimidate me from filing THIS BRIEF because these individual lied who knew or should have known the information was already filed by me in the pubic record.

4.E.12 Trying to avoid worrying my elderly father who is very ill; I had the two special agents sit on the porch in 100 degree weather. Despite this, my father still became aware of these men sitting on my porch and had already guessed they were federal agents as I have been dealing unchecked corruption in Kentucky courts for over a decade.

4.E.13 The Florida F.B.I. agents were professional and did not have preknowledge that

they were being used for bad purpose by Kentucky F.B.I. agents and Kentucky officials to intimidate me, and my father by coming to my home unannounced. If they had called ahead I would have gladly set up an interview at the local library to prevent my elderly ill father from the emotional upset and would have been better equipped emotionally to deal with this issue.

4.E.14 I cannot file malicious prosecution cause of action against the unknown Kentucky F.B.I. and Kentucky Officials because Judge Van Tatenhove has issued an order that I cannot file in Kentucky Federal Courts without permission.

4.E.15 The Sixth Circuit Court of Appeals must address judges and/or their agents misusing the Department of Justice resources against Ms. Mischler or the Sixth Circuit Court of Appeals no longer has any ethical credibility.

4.E.16 See Exhibit 3 of the card the Special Agent left with me.

### ISSUE F. DISTRICT COURT FAILING TO TAKE AS TRUE ALLEGATIONS IN THE COMPLAINT; KY SENIOR JUDGE PAYMENT FRAUD.

4.F.1 Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on 9/29/2018.

4.F.2 I had no knowledge until after media reports surfaced in August/September 2018 that W.V. Supreme Justices were federally indicted and undergoing impeachment proceedings in West Virginia.

4.F.3 The allegations in W.V. concern payment to W.V. senior judges that was illegal and excessive spending. See Exhibit 4.

4.F.4 August 14, 2018 Associated Press: "Loughry, Workman and Davis also were impeached for their roles in allowing senior status judges to be paid higher than allowed wages. Lawmakers say the overpayments violated state law and stopped when they were challenged by the Internal Revnue Service". See Exhibit 4.

4.F.5  August 24, 2017- Appellant Amy Mischler in 17-cv-66 [EDKY]  Paragraph 48 "Chief Justice Lambert bribed Judge Lewis Nichols per provision in the senior judge administrative order kept secret from the public,; Judge Nichols did not have to work the required amount of time to receive the extra judicial retirement in return for obstructing and delaying Ms. Mischler's case to cover up the Paxton 2002 order issued without subject matter jurisdiction and thus always subject to review".  See Doc #1, Page 16 of 22 , Page ID 16.

4.F.6  The overpayment to W.V. senior judges was done through an administrative order just like Kentucky.

4.F.7  The KY state law required senior judges to finish their hours in five years.  The illegal administrative order by Chief Justice Lambert extended it to ten years.  Because no one can obtain open records from the Kentucky Courts; no one would be able to discovere that senior judges simply did not work the hours.

4.F.8  The KY Supreme Court allowed a limited audit that showed serious deficencies in accounting and issues just like what happened in W.V.    See Exhibit 5.

4.F.9  Specifically, the KY Audit supports the Appellants legal theory that AOC poor record keeping , and simple lack of documentation as found in the audit would allow senior judges, to not be required in working the full requirement to receive extra benefits.  See Exhibit 5.

4.F.10 District Court failed to take as true the Appellants allegations that senior judges in Kentucky were being bribed to fix cases like the Appellants to cover up prior judicial misconduct.

4.F.11 Normally the Attorney Generals Office would investigate bribery of Kentucky Judges.  That does not happen because the Kentucky Attorney Generals Office, along with the

law firm of Stites & Harbison are acting in criminal conspiracy with KY Chief Justice Minton to cover up the serious problems in the Kentucky Court system.

4.F.12 District Court failed to take as true the Appellants allegations that "*Stites & Harbison PLLC, know fully well that Ms. Mischle'rs parental rights were violated by state judicial actors but continued to defraud the KY tax payers in the amount of $40,000 on the basis that they could get away with it because of the Beshear family influence upon both the state and federal courts of Kentucky. Steve Beshear was the Governor during some of the actions while his son was employed with Stites & Harbison PLLC. Steven Beshear is now employed with Stites & Harbison while his son is Attorney General of Kentucky*" See 17-cv-66, Document 1, Page 15 of 22 Page ID 15, poaragraph 44.

4.F.13 With no "pending litigation" the Kentucky courts extended the without bid personal service contract with Stites & Harbison until June of 2018. Exhibit 6. Officially, this personal service contract looks legitimate. However, it is bribe from the Kentucky Courts to Attorney General Andy Beshear, former Governor Steve Beshear and Stites & Harbison PLLC to use their official influence to prevent discovery of judicial misconduct in Amy Mischler's cases.

4.F.14 See Exhibits 6, 7, 8, and 9 which are all appeals of writs of mandamus to the KY Court of Appeals concerning the multiple senior judges assigned to the Appellants cases to fix them.

4.F.15 Exhibit 6 is about the malicious prosecution against the Appellant where the arrest warrant was signed by Defendant Howard Keith Hall who committed fraud stating he had jurisdiction over the allegation when in fact it was in another county. Senior Judge Robert McGinnis refuses to rule on outstanding motions. Defendant Andy Beshear employees Jessica Malloy and Travis Mayo filed for a motion for extension of time in 2014 but have never

submitted an answer four years later. Defendant Stites & Harbison's employee Steven Beshear appointed the special justices to fix the case. Chief Justice Minton who has enriched Stites & Harbison $40,000 in personal service contracts has his employees hold this case in legal limbo when almost every case filed in 2015 has been finalized but Ms. Mischler is being denied constructive access to the Courts.

4.F.16 Exhibit 7 is about the fraud attorney Jonah Lee Stevens commited upon the state court in 2002. Stevens wrote in a EPO on July 22, 2002 that the Appellant was going to do specific acts of domestic violence against him in the future on August 5, 2002. This is also the civil action Defendant Judge Julie Paxton committed fraud issuing an order without subject matter jurisdiction after the case had finalized changing child custody and subseuqnetly having the Appellant arrested, hence Exhibit 6. See Exhibigt 10.

4.F.17 Exhibit 7 has Senior Judge McGinnis refusing to rule on outstanding motions. Defendant Andy Behsear has his employees Jessica Malloy and Travis Mayo file for extensions of time instead of having to answer. Those extensions were filed four years ago in 2014. Defendant Stites & Harbison PLLC employee Steven Beshear assigned special justices in order to make sure the cases are fixed to prevent exposure of judicial misconduct. Chief Justice Minton who has enriched Stites & Harbison $40,000 in personal service contracts has his employees hold this case in legal limbo when almost every case filed in 2015 has been finalized but Ms. Mischler is being denied constructive access to the Courts.

4.F.18 Exhibit 8 is about the writ of mandamus to hold Judge Julie Paxton accountable for committing fraud upon the court for dismissing a valid emergency protection order filed by the Appellant, with Paxton then illegally and unconstittutionally issuing an order after the case was finalized changing child custody without subject matter jurisdiction. Senior Judge Robert

McGinnis refuses to address outstanding motions at the trial court level. Defendant Andy Behsears employees Travis Mayo and Jessica Malloy filed motions for extension of time in 2014 and have never filed an actual answer four years later. Defendant Stites & Harbison's employee Steve Beshear appointed the two special justices to make sure that this case was fixed. Chief Justice Minton who has enriched Stites & Harbison $40,000 in personal service contracts has his employees hold this case in legal imbo when almost every case filed in 2015 has been finalized but Ms. Mischler is being denied constructive access to the Courts.

4.F.19  Exhibit 9 is about the writ of mandamus to hold Judge Julie Paxton accountable for committing fraud upon the court. Paxton issued a domestic violence finding against the Appellant for marching in public with a sign in 2006 to cover up Paxton's fraud in 2002. There has been a subsequent factual finding by Judge John David Preston that there were no actual allegations of domestic violence in the petition that Paxton ruled upon. Neither Preston, Chief Justice Minton, the Kentucky Courts, or the Kentucky Judicial Conduct Commission have held Paxton accountable for her fraud.

4.F.20  Exhibit 9 is about senior judge McGinnis refusing to address outstanding motions at the trial court level. It shows that Defendant Andy Beshears employees Travis Mayo and Jessica Malloy filed motions for extensions of time in 2014 and never filing an answer four years later. It shows Stites & Harbison PLLC employee Steve Beshear appointing two special justices to fix the case. Chief Justice Minton who has enriched Stites & Harbison $40,000 in personal service contracts has his employees hold this case in legal imbo when almost every case filed in 2015 has been finalized but Ms. Mischler is being denied constructive access to the Courts.

4.F.21  Exhibit 10 shows Attorney Jonah Lee Stevens alleging on July 22, 2002 that in

the future on August 5, 2002 that the Appellant is going to commit specific acts of violence against him.

4.F.22 Exhibit 11 shows Judge Julie Paxton dismissed the domestic violence action in Exhibit 10 on August 7, 2002.

4.F.23 Well established state and federal case law filed by the Appellant multiple times in both state and federal court show that thirty days past August 7, 2002 that Paxton lost all subject matter jurisdiction and had no lawful authority to issue an order in the dismissed domestic violence action where no appeal was taken.

4.F.24 Exhibit 12 shows Judge Julie Paxton illegally changed child custody without any legal authority to do so on September 23, 2002.

4.F.25 Judge Julie Paxton ordered Kentucky DCBS to investigate and create child protective service records against Amy Mischler in 2006. A copy of that order will be supplemented to the record.

4.F.26 Exhibit 13 is the actual Senior Status Judge statute which requires the service to be completed within five years.

4.F.27 Exhibit 14 shows that Defendant Chief Justice Lambert created an illegal administrative order in violation of the actual statute to facially allow senior status judges to complete service within 10 years, but in actuality would not have to do the required work in return for fixing cases. This was easily done because the senior status judges work records are not subject to open records and AOC is documented by an limited audit of negligence bookkeeping.

***ISSUE G. DISTRICT COURT FAILED TO TAKE AS TRUE THAT KENTUCKY GOVERNOR AND HIS EMPLOYEES WITHIN THE CABINET FOR HEALTH AND FAMILY SERVICES ARE FALSIFYING CHILD PROTECTIVE SERVICE RECORDS CONTINOUSLY SINCE 2006 UNTIL THE PRESENT DAY.***

4.G.1  Pursuant to 28 USC Code Section 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on 9/29/2018.  _____

4.G.2  Defendant Judge Julie Paxton entered an order in 02-D-00202-003 that child protective service workers were to investigate the Appellant and "provide services".  Paxton's intention was that false allegations were be entered to defame the Appellant in order to cover up Paxton's judicial and criminal misconduct from 2002 illegally changing child custody to benefit the Appellants ex husband, an attorney and member of the Kentucky Bar Association.

4.G.3  Various Defendants  KY Child Protective Services employees including Cabinet General Counsel Mona Womack have in fact, falsified child protective service records including the creation of a 2002 investigation against the Appellant believed to be placed in the records in 2013.

4.G.4  KY Child Protective Services says it has illegally destroyed the hard copies of the Appellants records by mistake though these hard copies are supposed to be maintained by KY for 20-25 years per agreement with the Federal Department of Health and Human Services.

4.G.5  Exhibit 15, the Kentucky Inspector General made findings that KY Child Protective Services are falsified and that the system is set up to encourage falsification and changing of records.  KY Child Protective Services did not enact the recommended changes by its own OIG to require time stamps and other modifications to prevent employee falsifying and changing these records.

4.G.6  The Appellant won two administrative hearings against KY Child Protective Services.  She was supposed to have obtained all her records through administrative subpoena. KY Child Protective Services withheld documents.

4.G.7  Amy  Mischler had no records with KY Child Protective Services until October

2006.

4.G.8  Under false pretenses, Defendant social worker Shereena Hamilton-Spurlocke visited the Appellants home in April 2006 stating that she needed to inspect the Appellants home because there was an allegation of child abuse against her.  Hamilton was family friends with Defendant Selena Stevens, the sister in law to Attorney Jonah Lee Stevens.

4.G.9  KY Child Protective Services withheld Exhibit 16 from the Appellant because Defendant Hamilton -Spurlocke had no jurisidiction granted to her until October 19, 2006. Thus the April 20, 2006 visit to the Appellants home was a violation of the Fourth Amendment of the Constitution.

4.G.10  Exhibit 16, a KY state document states that the Appellant has been investigated Four times, with the dates being 1) April 20, 2006, 2) May 25, 2006, 3) August 19, 2002, for child protective services and an adult protective services on 4) August 19, 2002.

4.G.11 Exhibit 16 intake numbers are significant because it shows the 2002 child protective services investigation against Ms. Mischler intake number was obtained in 2006 and is sequential with both the April and May child protective services investigation.  All three investigations were entered into the system the same day.

4.G.12  Exhibit 17 is an email from General Counsel office Mona Womack to David Lovely.  Mona Womack's email says that there are only two investigations against Ms. Mischler which directly contradicts Exhibit 16.  Exhibit 17 says one investigation was opend August 19, 2002 and closed 8/27/2002 and the second was opened October 18, 2006 and closed 8/17/2007.

4.G.13  Exhibit 16 and 17 dates and numbers of investigation SHOULD BE IDENTICAL but are not.

4.G.14  Exhibit 18 is a document received by the Appellant pursuant to the

administrative subpoena. It states that Ms. Mischler only had two child protective service investigations against her and one adult protective services opened.

4.G.15 Exhibit 18 number of investigations against the Appellant should be identical to Exhibit 16 and 17 but are not. The dates should also be identical but are not.

4.G.16 Exhibit 19 is an administrative investigation by Defendant Debbie Dile. She states there are two investigations against Amy Mischler dated 04/[20]06 and 05/[20]06. This administrative report is per se evidence that Dile requestion an extension for her report for records to be entered against Amy Mischler. This shows Dile knew about the 4th Amendment violation in April 20, 2006 and that Shereena Hamilton-Spurlock abused her position as a social worker to spy on the inside of home for personal friends.

4.G.16 Exhibit's 19, 18. 17 and 16 should be identical in the number of investigations and dates. They are not.

4.G.17 Exhibit 20 is a second report also prepared by Debbie Dile.

4.G.18 Dile states she consulted with "Mona" in this document. Mona is Deputy General Counsel Mona Womack. Dile received legal advice to falsify her report from Defendant Mona Womack.

4.G.19 Exhibit 20 and Exhibit 19 should be identical because they are prepared by the same person Debbie Dile issuing a report on Amy Mischler's records. They are not identical and substantively are different.

4.G.20 Exhibit 20 states that there are three child abuse investigations against Amy Mischler dated May 2006, unknown date, and December 2006 where Dile states "a third referral is added to open the case, . . .which created a substantiation against [Ms. Mischler] which is not accurate". See second page of Exhibit 20.

4.G.20 Exhibit 20 should be identical to Exhibits 19, 18, 17, and 16 in the numbers of cases and dates. They are not. They are substantilly different with the December 2006 investigation.

4.G.21 Exhibit 21 states that the child abuse finding against Ms. Mischler was overturned. Ms. Mischler was told she had no substantiations of child abuse against her and was given a document stating so.

4.G.22 Exhibit 22 states that there were three referrals against Ms. Mischler. One was an I & G report [adult protective services] dated 8/9/2002, and two child abuse investigations dated April 20, 2006 and October 2006.

4.G.23 Exhibit 23 substantially differs from the Debbie Dile report in Exhibit 20 because there is no mention of the December 2006 child abuse/sbustantiation against Amy Mischler despite Exhibit 23 being created in May 2007.

4.G.24 Exhibit 24 was created on 12/8/2008. This was created under attorney Jonah Stevens name and not in Amy Mischler's records. It states that Amy Mischler is a substantiated child abuser in 2008 although Amy Mischler was given documents stating she had no substantiations against her in 2007.

4.G.25 Psychologist Sally Brenzel was given this record and knew it contradicted what Amy Mischler had told her and the records given to Brenzel by Amy Mischler. Dr. Brenzel did not inform Amy Mischler that there Jonah Stevens records said that Amy Mischler had a child abuse substantiation against her. Dr. Brenzle instead wrote her report insinuating that Amy Mischler was mentally ill because Mischler believed child protective services had acted unethically. Dr. Brenzel did not disclose that she, Dr. Brenzel had had personal service contracts with both KY Child Protective Service the KY Court system.

4.G.26 Exhibits 16-24 should be identical in the number of investigations and the dates regarding Amy Mischler. They are not.

4.G.27 Per KY Administrative Rule; Amy Mischler is supposed to receive a certified letter through the United States Postal Service as Constitutional Due Process notice before being placed on the substantiated child abuser list. Mischler is also supposed to receive a letter notifying her each and every time she is investigated.

4.G.28 Amy Mischler has only ever received one certified due process notification in March 2007 of being placed on the child abuser list in October 2006 of a single time. This was only after an anonymous person said that child abuse records would be used in private child custody on the internet. See Exhibit 25.

4.G.29 Defendant Matt Bevin as Governor of Kentucky has a duty to address falsified child protective service records which are felonies under state law when he noticed of them.

4.G.30 Defendant Andy Beshear as Attorney General of Kentucky has a duty to address falsified child protective service record and prosecute individuals particularly Debbie Dile, located in KY Child Protective Services Frankfort cental office, who knew she was falsifying internal investigations about misconduct in Pike County Kentucky.

## ISSUE H. DISTRICT COURT DISMISSED HOWARD KEITH HALL AS A DEFENDANT EVEN THOUGH HALL NEVER FILED AN ANSWER OR MOTION TO DISMISS.

4.H.1 Defendant Hall was dismissed in violation of the civil rules without Hall filing an answer or a motion to dismiss.

## ISSUE I. DEFENDANT MATT BEVIN DID NOT TIMELY FILE HIS MOTION TO DISMISS.

4.I.1 From memory; Matt Bevin attorney filed for an extension of time that was granted because everyone knew that Matt Bevin employed the Judges paramour.

4.I.2 From memory; Matt Bevin's attorney missed the deadline and filed outside of the

time the extension was granted.

4.I.3    Matt Bevin was only sued in his official capacity to address the grotesque misconduct that is still continuing under his administration regarding the falsification of Amy Mischler's records.

## ISSUE J.    DISTRICT COURT FAILED TO ADDRESS THE CORRECT STATUE OF LIMITATIONS AND THE CONTINUING VIOLATION DOCTRINE

4.J.1    Count 1 is common law fraud against Defendant preventing the discovery that Hamilton Spurlocke did not have jurisdiction and committed a 4th Amendment Violation.

4.J.2    Ms. Mischler has diversity jurisdiction being a resident of Florida.

4.J.3    Common law fraud in Kentucky has a five year statute of limitations.

4.J.4    The continuing violations doctrine must be applied because Kentucky withheld open records from Amy Mischler from 2007/8 until 2016 showing that Hamilton did not have any authority to invade Ms. Mischler's home under false pretenses on April 20, 2006 and KY Protective Services General Counsel Mona Womack and others conspired to commit this fraud.

4.J.5    Count 2 is common law fraud against Defendants falsifying a child protective services document to be used in private child custody between parents in a state court proceeding.

4.J.6    Ms. Mischler has diversity jurisdiction being a resident of Florida.

4.J.7    Common law fraud in Kentucky has a give year statute of limitations.

4.J.8 The continuing violations doctrine must be applied because Kentucky withheld this record from Amy Mischler from 2007/8 until 2006 that Jones-Gray wrote that Amy Mischler had a child abuse substantiation against her when such was false.    Defendant Psychologist Dr. Sally Brenzel participated in the fraud because she had both the Jones-Gray document and Amy Mischler's document, along with Amy Mischler telling Dr. Brenzel she was cleared of all

substantiations. Dr. Brenzel intentionally withheld from Amy Mischler knowledge of the Jones-Gray fraud document and then Dr. Brenzel issued a report that Amy Mischler was unfit based on these falsified records to the senior Judge Lewis Nicholls. This is the same Lewis Nicholls who was a senior judge and was being bribed through the senior judge program to fix cases in order to not have to work the required time as state previously.

4.J.9 Count 3 is a civil rights violation.

4.J.10 has shown conclusively that the civil rights violation to interfere with her private child custody rights is ongoing and continuous because she is being denied access to the constructive access to the courts as shown in the exhibits.

4.J.11 Count 4 is a first amendment violation.

4.J.12 Amy Mischler has a constitutional right of redress of grievances against KY Child protective Services and Matt Bevin to address these falsified records. She requested an administrative hearing and was outright denied by the Bevin administration. There is no statute of limitations because she is still entitled to redress even today.

4.J.13 Count 5 is injunctive relief requested.

4.J.14 Amy Mischler requested the District Court to order Matt Bevin and KY Child protective Service to preserve her records. She also requested injunctive relief against Andy Beshear to enforce the law to investigate his former law firm, Stites & Harbison PLLC for receiving unjust enrichment for covering up bribery within the Kentucky court system.

Part 5. What action do you want the Court of Appeals to take in this case?

5.A.1 I want the same result as In re Cement Antitrust litigation, which is the entirety of every order in the District Case be vacated and a new judge assigned to conduct further proceedings starting with the motion to protect documents being destroyed by the Cabinet

Defendants. Judge Van Tatenhove HAS NEVER RULED ON THAT MOTION.

5.B.1 I want a factual finding that Judge Caldwell actions of stalking the Appellants twitter account is unethical and violations of the conflict of interest rules.

5.B.2 I want my case remanded to a Federal District outside of both Kentucky districts; preferably to Michigan or Northern Ohio.

5.C.1 I want an order from the Sixth Circuit Court of Appeals issued to Judge Van Tatenhove to disclosed which cases he allowed a teenage boy to draft opinions on the record of this case.

5.D.1 I want an order issued requiring the Sixth Circuit Court of Appeals to disclose the name so employees doing social media research on Appellant Amy Mischler by the IP addresses she has already filed in the public domain showing the ex parte social media research.

5.E.1 I want a show cause order issued to Judge Karen Caldwell, Judge Van Tatenhove and Appelleeds Governor Matt Bevin to respond under oath in this action about any knowledge they have regarding the reporting to the Department of Justice to investigate Amy Mischler which resulted in the July 3, 2018 visit to her home by Special Agent Shane Baumgartner.

### *SPECIAL PUBLIC RECORD NOTICE*

Attached as Exhibit 26 is an order from the Kentucky Supreme Court. This is the highly political pension case that is likely to go to the United States Supreme Court regardless which side wins. Appellee Andy Beshear is a litigant and as shown in this poorly written brief with numerous exhibits that Andy Beshear, through his former employment with Stite & Harbison PLLC has leverage over the Kentucky Supreme Court.

Unless this conflict of interest is addressed at the Kentucky Supreme Court between Beshear, Stites & Harbison PLLC, Chief Justice Minton and the past fraud that took place in the

Defendants.   Judge Van Tatenhove HAS NEVER RULED ON THAT MOTION.

5.B.1   I want a factual finding that Judge Caldwell actions of stalking the Appellants twitter account is unethical and violations of the conflict of interest rules.

5.B.2   I want my case remanded to a Federal District outside of both Kentucky districts; preferably to Michigan or Northern Ohio.

5.C.1   I want an order from the Sixth Circuit Court of Appeals issued to Judge Van Tatenhove to disclosed which cases he allowed a teenage boy to draft opinions on the record of this case.

5.D.1   I want an order issued requiring the Sixth Circuit Court of Appeals to disclose the name so employees doing social media research on Appellant Amy Mischler by the IP addresses she has already filed in the public domain showing the ex parte social media research.

5.E.1   I want a show cause order issued to Judge Karen Caldwell, Judge Van Tatenhove and Appelleeds Governor Matt Bevin to respond under oath in this action about any knowledge they have regarding the reporting to the Department of Justice to investigate Amy Mischler which resulted in the July 3, 2018 visit to her home by Special Agent Shane Baumgartner.

### *SPECIAL PUBLIC RECORD NOTICE*

Attached as Exhibit 26 is an order from the Kentucky Supreme Court.  This is the highly political pension case that is likely to go to the United States Supreme Court regardless which side wins.  Appellee Andy Beshear is a litigant and as shown in this poorly written brief with numerous exhibits that Andy Beshear, through his former employment with Stite & Harbison PLLC has leverage over the Kentucky Supreme Court.

Unless this conflict of interest is addressed at the Kentucky Supreme Court between Beshear, Stites & Harbison PLLC, Chief Justice Minton and the past fraud that took place in the

KY senior status judge program; the entire case of 2018-SC-000419 et. al, are ethically compromised.

OUT OF TIME.

Due to post office closing early on Saturday; I have no more time to write. The majority of this brief was written starting at 2:00 a.m. on 9/29/2018 to my father's serious ongoing health issues.

OTHER RELIEF REQUESTED

I WOULD LIKE THE SIXTH CIRCUIT COURT OF APPEALS TO ASSIGN AN ATTORNEY TO REPRESENT ME THAT IS BASED OUT OF NORTHERN OHIO OR MICHIGAN AND FREE FROM THE INFLUENCE OF KENTUCKY.

I WANT AN ORAL ARGUMENT BEFORE THE SIXTH CIRCUIT COURT OF APPEALS.

I WOULD LIKE A SHOW CAUSE MOTION TO STITES & HARBISON PLLC WHY THEIR CLIENT, KY SUPREME COURT HAS NOT MOVED MY CASES FORWARD.

I WOULD LIKE A SHOW CAUSE MOTION TO GOVERNOR MATT BEVIN WHY HE HAS NOT ADDRESSED THE ISSUE THAT SOCIAL WORKERS ARE ALTERING CHILD PROTECTIVE SERVICE RECORDS AND EXPLAIN WHY MY HARD COPIES HAVE BEEN DESTROYED SUPPOSEDLY.

I WOULD LIKE A SHOW CAUSE MOTION TO KENTUCKY ANDY BESHEAR WHY THE ATTORNEY GENERALS OFFICE REFUSES TO PROSECUTE JULIE PAXTON FOR ILLEGALLY ISSUING AN ORDER CHANGING CHILD CUSTODY AND SOCIAL WORKERS, PARTICULARLY DEBBIE DILE AND MONA WOMACK FOR FALSIFYING RECORDS WHICH IS A FELONY NOT SUBJECT TO STATUTE OF LIMITATION IN KENTUCKY.

This brief has 24 pages including 22 pages of text and 2 pages of form.

This brief has 26 necessary exhibits. Which has 58 pages

This brief is mailed on Saturday, September 29, 2018 to the Court and Appellees.

A Courtesy Copy is sent to Special Agent Baumgardner Matt Brain is noticed that it he does not address DCBS Fraud in my case that I will Sue in D.C. Federal Court; Secretary Alex Azar and OCR Roger Severino to withhold all HHS funding from KY.

I am poor. I am only sending one copy per defendant/Attorney. For example, only one copy will be going to Stites. Only one copy to Cabinet for Health and Family Services. Only one copy to KY Attorney General. Pro Se litigants should be allowed to file electronically And are penalized financially.